*SM*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

**RECEIVED**

*MARYAM ABUBAKAR* )
_____ )
)
)
Plaintiff(s), )
)
v. )
*WALMART INC.* )
)
_____ )
)
Defendant(s). )

**NOV 22 2021** SH

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

Case Number: _____

21cv6248
Judge Mary M Rowland
Magistrate Judge Gabriel A. Fuentes
RANDOM

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is *A LEGAL RESIDENT* of the county of *COOK* in the state of *ILLINOIS* .

3. The defendant is_____, whose street address is *A MULTIMILLION DOLLAR INDUSTRY* , (city)*LINCOLNWOOD*(county) *COOK* (state) *ILLINOIS* (ZIP)*60712*

(Defendant's telephone number) *(847)- 983 - 5307*

4. The plaintiff sought employment or was employed by the defendant at (street address)

*6840 N MCCORMICK BLVD* (city) *LINCOLNWOOD*

(county) *COOK* (state) *IL* (ZIP code) *60712*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

5. The plaintiff [*check one box*]

    (a) ☐ was denied employment by the defendant.

    (b) ☐ was hired and is still employed by the defendant.

    (c) ☑ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _January_ , (day) _010_ , (year) _2020_ .

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☑*has* ☐*has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

        (i) ☑ the United States Equal Employment Opportunity Commission, on or about (month) _January_ (day) _01_ (year) _2021_ .

        (ii) ☑ the Illinois Department of Human Rights, on or about (month) _DECEMBE_ (day) _18_ (year) _2020_ .

    (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☑ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

*M·A* ☒ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b)   The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)   Attached is a copy of the

(i)  Complaint of Employment Discrimination,

☐ Yes    ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.   *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐     the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☐   the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month) *SEPTEMBER* (day) *01* (year) *2021* a copy of which

*Notice* is attached to this complaint.

9.   The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

(a) ☒ Age (Age Discrimination Employment Act).

(b) ☒ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☑ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☑ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☑ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☑ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12.    The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☑ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☑ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☑ failed to stop harassment;

(g) ☑ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify):  _INTIMIDATION & COARCED_

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

*I was discriminated against by the Manager who denied me training and ignored me when I speak to them. I suffer sexual harrasment from male staffs then I was retaliated against when I complained*

13.  The facts supporting the plaintiff's claim of discrimination are as follows:

*Email e-mail between me plaintiff and the employers. Copies of documents. CCTV records with the — employers.*

14.  **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.  The plaintiff demands that the case be tried by a jury. ☑ Yes ☐ No

16.  THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [***check only those that apply***]

(a)  ☐  Direct the defendant to hire the plaintiff.

(b)  ☐  Direct the defendant to re-employ the plaintiff.

(c)  ☐  Direct the defendant to promote the plaintiff.

(d)  ☐  Direct the defendant to reasonably accommodate the plaintiff's religion.

(e)  ☐  Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f)  ☐  Direct the defendant to (specify): *Compensate for my pains and sufferings. And, — apologyze for denying me benefits*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I was exposed to covid19 twice during my employment an I developed back pain due to the job.

(g)    ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h)    ☑ Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

Maryam Abubakar
(Plaintiff's name)

555 W. MADISON St #W908
(Plaintiff's street address)

(City) Chicago (State) IL (ZIP) 60661

(Plaintiff's telephone number) (312) – 998 – 1917

Date: 11/22/21

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

6

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Maryam Abubakar**<br>**555 W Madison Street, 4908**<br>**Chicago, IL 60661** | From: | **Chicago District Office**<br>**230 S. Dearborn**<br>**Suite 1866**<br>**Chicago, IL 60604** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2021-01562** | **Katarzyna Hammond,**<br>**Investigator** | **(312) 872-9703** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman/eh*                                        8/31/2021

**Julianne Bowman,**
**District Director**

*(Date Issued)*

Enclosures(s)

cc:     **WALMART**
**c/o Deborah Sanders, Esq.**
**Littler Mendelson**
**2301 McGee Street, Suite 800**
**Kansas City, MO 64108**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **440-2021-01562** |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **MARYAM ABUBAKAR** | **(312) 998-1917** | **1978** |

| Street Address | City, State and ZIP Code |
|---|---|
| **4855 N KIMBALL AVE, 1G, CHICAGO,IL 60625** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **WALMART** | **501+** | **(847) 983-5307** |

| Street Address | City, State and ZIP Code |
|---|---|
| **6840 N MCCORMICK BLVD, LINCOLNWOOD, IL 60712** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☒ SEX ☒ RELIGION ☒ NATIONAL ORIGIN<br>☒ RETALIATION ☒ AGE ☒ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest **12-26-2019** Latest **11-19-2020**<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I began my employment with Respondent on or about December 26, 2019. My most recent position was Personal Shopper. Respondent is aware of my disability. I requested a reasonable accommodation which was not provided. I was subjected to sexual harassment and harassment. I was also subjected to different terms and conditions of employment, including, but not limited to, having to clean windows, restock items, and sweep the floors. I was denied training. I complained to Respondent. Subsequently, I was denied a promotion for which I applied, and I was denied benefits. On or about November 19, 2020, I was constructively discharged.**

**I believe I have been discriminated against because of my race, Black, my national origin, Nigerian, my religion, Islam, my sex, female, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.**

**I also believe I have been discriminated against because of my disability, and in retaliation**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Maryam Abubakar on 03-11-2021 07:52 PM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **440-2021-01562** |

| **ILLINOIS DEPARTMENT OF HUMAN RIGHTS** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.**

**I further believe I have been discriminated against because of my age, 42 (YOB: 1978), and in retaliation for engaging in protected activity, in violation of the Age Discrimination in Employment Act of 1967, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Maryam Abubakar on 03-11-2021 07:52 PM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.** **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2.** **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.** **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.** **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.** **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** – **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS – Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION – Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE – All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**Office 2007**

| | |
|---|---|
| **From:** | Maryam Abubakar <admariam14@gmail.com> |
| **Sent:** | Monday, August 16, 2021 1:22 PM |
| **To:** | KATARZYNA HAMMOND |
| **Subject:** | Re: EEOC Charge against Walmart 440-2021-01562 |

Good Afternoon Ms Hammond,

I wanted to mention that during the period of my employment with Walmart, I wore the Muslim women's head covering (hijab). The management knew that had I moved here from Saudi Arabia, and the managers used to call me to translate from Arabic to English or vice versa when they had difficulty communicating with Arabic-speaking associates.

They allowed associates to work on restrictions or even move their schedules when those associates requested time off, but in my case they made me use my Paid Time Off (PTO) for doctor's visits and I was made to stay home when I was put on medical work restrictions. I submitted documents to verify this in my email of 8/13.

The issues with Dovid Turner (DT) still hurt because from my perspective, he was aided and abetted by the managers. When I was working in the presence of the management staff, DT would approach me and say "Thank you for doing this, I appreciate it" and sometimes he would say, "Chap chap, bye. Go do something else." Another staff member by the name of Daniella warned me to be careful of another staff member named Justin. She said Justin was spying on me for Nicole, the manager.

At present, it seems like even the staff I was friends with from Walmart do not want to have anything to do with me because they don't respond to my calls or messages. Another staff blocked me on Instagram!

Thank you,
Maryam.

On Fri, Aug 13, 2021, 10:07 AM Maryam Abubakar <admariam14@gmail.com> wrote:
Dear Ms. Hammond,

Thank you for the opportunity to submit further evidence to support my charge of discrimination against Walmart Inc. It is not easy for individuals like me to stand against professional law firms such as Littler Mendelson working on behalf of behemoth corporations like Walmart, but my husband, who is a US citizen, and I depend on the EEOC to render fair judgment in the enforcement of federal anti-discrimination laws. Unfortunately, I found Deborah Sanders' letter a shameful attempt to repackage the unlawful discrimination, harassment and retaliation I experienced as "business as usual."

Ms. Sanders alleged, "Ms. Abubakar was afforded a medical leave of absence and when medical restrictions prohibited her from being able to perform the essential functions of her job was offered reassignment as an accommodation." I have documents to refute this claim. I was made to extend my leave of

1

absence until the restrictions were removed, even though they emailed me documents about reassignment for accommodation. However, the next day Julie and Leah from Sedgwick called me and said I cannot return on restrictions! I had to get my doctors to fill out a different return to work form without restrictions which caused me to stay at home for almost an additional month. This can be collaborated by the documents I uploading here, and by my doctors because they had to readjust my return to date without restriction.

Ms. Sanders further stated, "Ms. Abubakar reported concerns to Walmart regarding harassment and discrimination, which were fully investigated and found to be unsubstantiated." I have the email I received from Walmart mentioning that due to the nature of the case and respect for the individuals concerned, Walmart would not reveal to me the actions taken against the people about whom I complained.

"When Ms. Abubakar was interviewed by the Ethics investigator, she denied that she was being harassed or discriminated against and expressed that all of her concerns had been taken care of. **Exhibit 11**." When Ethics contacted me for the first time, I did inform them that I did not want anyone to lose their jobs, so I wanted to withdraw my complaint and try to resolve the issue with those concerned. It was after this incident that DT wore the "Pussy Wagon" T-shirt and I contacted the Ethics officer again and told her about it, but she told me to file another complaint because the initial one had been closed, so I was made to file a second complaint, and was assigned a different caseworker. DT did not only put on that offensive shirt, but he became violent by hitting me with his shopping cart. I reported this incident to the assistant manager, Carlton. Another time, DT said to me he was going to "fuck" his girlfriend. In addition, other times he would bend over and allow his pants to roll down his buttocks when I approach where he was standing. Most of these incidents are on the CCTV camera and some including the denial for me to return to work are in my associate page that I cannot access now because Walmart locked the account. I was out of work because after I contracted coronavirus in April, I had surgery due to the pains I was having. Unfortunately, I had to go for another surgery because I was bleeding from May until August 2020 due to the surgery. By November, I had contracted the coronavirus, but I thought my symptoms indicate pregnancy since I already gotten the virus earlier in April.

I am not the only one with the opinion that B.R was given the team lead even though others were more qualified, since had not been in the job for 6 months. When I applied for the position on site on the Walmart computer, I was required to answer the questions, "Have you been employed here for six months?" If I had answered "No," the application would have disqualified me. However, for reasons unknown to me, B.R. was allowed to complete the application even though she had not worked at Walmart for six months at that point.

I submitted my complaints to the manager Nicole Olsen and to Walmart Ethics when it all happened. Thereafter I tried to apply for financial aid for Walmart associates, but Nicole retaliated by denying me the right to apply for it by stating that I could only submit a request for $200 instead of the $1500 of the provision. Days after that, she and her assistant Javier called me to her office and accused me of "being a problem" by filling my complaint to Walmart Ethics. "Maryam, why are you a problem?" I said, "What did I do?" She said, "You complained to Ethics. You're holding the job back." I told her I was not holding the job back. She further asked me, "What was the decision that Ethics took for the complaint you filed?" I told her I withdrew the case because I did not want anyone to lose his or her job, so I would rather that we resolved it between ourselves. After that, she let me go. Her assistant Javier was there. I was scared and intimidated due to the manner in which they summoned me, and I was already sick with Covid-19 again, so I resigned about 3 days later. I have copies of my complaint to Walmart Ethics and the email containing the bills Nicole Olsen told me to submit to her so she would file my application for the financial aid for associate in crises, which she later said, had expired and I had to reapply for it again, which never happened. I now have a medical disability because of these incidents. I am on antidepressant and anxiety medication, not to mention the long-term effects of Covid19 for which I am still seeking medical attention for treatments.

Ms. Sanders stated, "She further alleged Personal Shopper A.H. was staring at her and following her to the bathroom." This is true. The harassment I experienced from A.H., which included following me when I went to the bathroom, was so severe that one day I had an episode of total incontinence at the bus stop after I left the store because I did not feel comfortable to use the facility's washroom until I clocked out for the day.

Please find attached the aforementioned documents and medical records verifying my account.

Sincerely,

Maryam.

On Wed, 11 Aug 2021 at 13:53, KATARZYNA HAMMOND <KATARZYNA.HAMMOND@eeoc.gov> wrote:

Dear Ms. Abubakar,

Please acknowledge the receipt of my e-mail.

Per your request, I am attaching redacted response to the Charge. Please provide us with any and all tangible evidence proving your allegations in reference to the above Charge of Discrimination.

If submitted additional information will not be sufficient enough to prove violation of our laws then, more than likely, then the Commission will be dismissing the Charge and issuing a document called the Notice of a Right to Sue (NRTS) which gives you 90 days after receipt to sue the employer in federal court.

Please provide your rebuttal/additional evidence if desired for our final analysis by August 25, 2021.

Feel free to ask me any questions you might have.

Thank you.

Kasia Hammond

Federal Investigator
Equal Employment Opportunity Commission

**JCK Federal Building**
**230 South Dearborn St., Suite 1866,**

**Chicago, IL 60604**
Ph: 312-872-9703
Fax: 312-588-1260

E-mail: katarzyna.hammond@eeoc.gov



**Littler CaseSmart®
Program Mailing
Address:**

**Littler Mendelson, P.C.**
Global Services Center
2301 McGee Street
Suite 800
Kansas City, MO 64108

May 7, 2021

**VIA EEOC PORTAL**

Katarzyna Hammond
U.S. Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn Avenue, Suite 1866
Chicago, IL 60604

> **Re:** **Maryam Abubakar vs. Walmart Inc.
> EEOC Charge No.: 440-2021-01562**

Dear Ms. Hammond:

This letter and attached documentation constitute Respondent Walmart Inc.'s ("Walmart") initial Statement of Position in response to the above-referenced Charge filed by former Associate Maryam Abubakar .[1] [2]  In her Charge, Ms. Abubakar alleges she was not provided a reasonable accommodation for an unidentified disability, subjected to sexual

---

[1] The information and accompanying documentation contained herein, and that which may be submitted hereafter, is strictly confidential and not to be used for any purpose other than the resolution of the current Charge and it may not be disclosed publicly.  See 42 U.S.C. §§ 2000e-5(b); 2000e-8(e); 29 C.F.R. §§ 1601.22, 1601.26; and 56 Fed. Reg. 10847.  To the extent Maryam Abubakar is in receipt of this information or accompanying documentation, she is hereby advised that this information is strictly confidential and should not be disclosed publicly or to any individual unless she has a privileged relationship with that individual.  Information and accompanying documentation contained herein designated confidential and/or containing sensitive medical information, confidential commercial or financial information, or trade secret information may not be disclosed to Maryam Abubakar.

[2] This response is based upon our understanding of the facts and the information reviewed thus far. Although there has not been an opportunity for formal discovery or a complete formal investigation, this response is submitted for the purpose of aiding the Commission in its investigation and facilitating the informal resolution of these matters.  This response, while believed to be accurate, does not constitute an affidavit or binding statement of Walmart's legal position, nor is it intended to be used as evidence of any kind in any administrative or court proceeding in connection with Ms. Abubakar's allegations.  Because additional facts likely would be uncovered through discovery or following a full investigation, Walmart in no way waives its right to present new or additional information at a later date, for substance or clarification.  Moreover, by responding to this Charge, Walmart does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist to the Charge and Ms. Abubakar's allegations.  Walmart requests that any efforts to contact its current or former Managers be directed through its counsel.

littler.com

Katarzyna Hammond
May 7, 2021
Page 2

harassment, harassed and discriminated against due to her race (Black), national origin (Nigerian), age (42), sex (Female), and religion (Muslim), and retaliated against when she was denied a promotion and was constructively discharged on November 19, 2020.

Contrary to her claims, Walmart has not unlawfully discriminated or retaliated against Ms. Abubakar in any manner. Ms. Abubakar was afforded a medical leave of absence and when medical restrictions prohibited her from being able to perform the essential functions of her job was offered reassignment as an accommodation. She was ultimately able to return to work without restrictions. Ms. Abubakar reported concerns to Walmart regarding harassment and discrimination, which were fully investigated and found to be unsubstantiated. As well, Ms. Abubakar claims Walmart retaliated against her for reporting concerns when she was not selected for a Team Lead position. Ms. Abubakar was considered but other more qualified minority candidates were instead selected. When she was not chosen for the Team Lead role, Ms. Abubakar elected to resign her employment. As such, and for the reasons more fully expressed below, there is no basis for Ms. Abubakar's claim and Walmart respectfully requests the Commission dismiss this Charge in its entirety with a finding of no probable cause.

## I.     WALMART'S RELEVANT POLICIES AND PROCEDURES

Walmart is an equal opportunity employer and it does not discriminate against or tolerate discrimination or unlawful harassment against its Associates on any legally recognized basis, including race, national origin, age, religion, sex or disability. **Exhibit 1.** To that end, Walmart adheres to a Discrimination and Harassment Prevention Policy. **Exhibit 2.** This Policy strictly prohibits discrimination or harassment by or directed at any Associate, job applicant, customer, member, supplier, or agent of Walmart. The Policy also instructs Associates to report any conduct that may violate this Policy to a salaried member of Management, or to utilize an Ethics Helpline. Id. Indeed, Associates are trained to immediately report any concern regarding possible violations of this policy to any salaried member of Management or confidentially and/or anonymously to the Global Ethics Office, 1-800-WMETHIC (1-800-963-8442), and all such reports will be promptly investigated. Retaliation is similarly prohibited. Id.

In addition to prohibiting discrimination and harassment in the workplace, Walmart expects its Associates to abide by its core values: (1) "Respect for the Individual;" (2) "Service to Our Customers;" (3) "Striving for Excellence;" and (4) "Act with Integrity." These core values go hand-in-hand with the integrity and ethical conduct that is the foundation of Walmart's business. See **Exhibit 1**.

Walmart also maintains an Accommodation in Employment Policy, and complies with all relevant and applicable provisions of the Americans with Disabilities Act, and does not discriminate against any Associate on the basis of a qualifying disability, a record of having a qualifying disability, or a known close relationship with an individual who has a qualifying

Katarzyna Hammond
May 7, 2021
Page 3

disability. **Exhibit 3**. Walmart also does not discriminate against any qualified Associate with respect to any terms, privileges or conditions of employment because of the person's physical or mental qualifying disability. Id. The Accommodation in Employment Policy articulates Walmart's commitment to accommodating disabled Associates and providing them the opportunity to find fulfilling careers at Walmart. Id. This Policy also sets out the simple steps an Associate must take to request a reasonable accommodation for an alleged disability. Id. Sedgwick Claims Management Services, Inc. ("Sedgwick"), Walmart's third-party administrator, in conjunction with its Accommodation Service Center ("ASC"), processes Associates' accommodation requests.

Additionally, in accordance with federal law, Walmart has a Family and Medical Leave Act ("FMLA") Leave of Absence Policy for Associates who need time away from work for their own serious medical condition, birth or adoption of a child, serious health condition of a child, spouse or partner, pregnancy/childbirth, or for military family care and exigency. **Exhibit 4**. In addition to leave available to qualified Associates under the FMLA, Walmart offers a personal leave of absence for eligible Associates who either do not qualify for leave under the FMLA and/or who require leave beyond the twelve weeks provided by the FMLA. See **Exhibit 4**.

At Walmart, the Company's primary concern is for the health and welfare of its Associates. See Associate Work-Related Injury Policy, attached as **Exhibit 5**. The Temporary Alternative Duty ("TAD") program provides modified job duties to an Associate with a work-related injury who has been released to modified duty by the treating physician.

Walmart provided Ms. Abubakar with training, information and documentation regarding these policies throughout her continued employment. **Exhibit 6**. As explained below, Walmart followed its policies and did not unlawfully discriminate or retaliate against Ms. Abubakar in any manner.

## II.     FACTUAL BACKGROUND

Walmart hired Ms. Abubakar as a Personal Shopper at Store #4177 in Lincolnwood, Illinois on December 26, 2019. She remained in that role until her resignation on November 19, 2020.

On February 18, 2020, Ms. Abubakar claims she slipped on a piece of ice in the walk-in freezer and subsequently experienced pain in her knee. She did not immediately notify management but instead sought treatment from her own physician and notified the People Lead Julie Taylor on February 22, 2020. **Exhibit 7.** Thereafter, Ms. Abubakar was treated and returned to work with restrictions on or about March 5, 2020. **Exhibit 8**. The Store offered her a Temporary Alternative Duty Assignment in which she was permitted to sit fifty percent of her workday, and was prohibited from squatting, kneeling or climbing on

Katarzyna Hammond
May 7, 2021
Page 4

ladders.  **Exhibit 9.**  She resumed performing normal work duties on or about March 30, 2020.

On June 24, 2020, Ms. Abubakar contacted Walmart's Ethics Helpline, raising concerns regarding discrimination based upon race, color, and national origin, and suggesting that she had been sexually harassed.  She also claimed Store Manager Nicole Olson had failed to report or address her sexual harassment concern, and that she was not being provided necessary training for her role.  She suggested that her Department Manager P.S., a Black hourly Associate, was assigning her more tasks than she was assigning to Hispanic and White Associates.  She further alleged Personal Shopper A.H. was staring at her and following her to the bathroom, and that Personal Shopper D.T. wore a shirt with an inappropriate slogan on it and was showing pornography on his phone to another Associate.  Ms. Abubakar claimed that she had notified Ms. Olson of these concerns and nothing had been done.  The concerns were investigated and were not substantiated.  **Confidential Exhibit 10.**  Associates were not singled out for tasks by protected status, but if an Associate completed their originally assigned tasks, those Associates might be given additional assignments to ensure that all necessary work was done for the day. Id.  All of the Associates performed the same tasks in the role and could be expected to clean, sweep or restock as well as picking and dispensing.  Id.  A.H. was hearing impaired and needed to watch people in order to read lips, and no evidence indicated he had followed her to the restroom.  Id.  D.T.'s shirt was immediately addressed by Assistant Store Manager Carlton Bass at the time of the incident, and the pornography reportedly seen on his phone was a pop-up window he immediately closed.  Id.  When Ms. Abubakar was interviewed by the Ethics investigator, she denied that she was being harassed or discriminated against and expressed that all of her concerns had been taken care of.  **Exhibit 11.**

Thereafter, Ms. Abubakar was out on medical leave from July 4 through October 1, 2020 for abdominal surgery.  She applied for leave from Sedgwick which was granted.  On or about September 3, 2020, she contacted Sedgwick to request an accommodation to permit her to return to work, as she had lifting restrictions and restrictions on standing for long periods.  Her physician indicated she could not bend, climb, twist, carry more than 10 pounds or stand for long periods of time.  **Exhibit 12.**  As the job of Personal Shopper required carrying up to 50 pounds, she was approved for a Reassignment in order to be able to return to work sooner.  **Exhibit 13.**  However, shortly thereafter, her physician submitted additional documentation lifting the medical restrictions, and she was able to return to work on October 1, 2020.  **Exhibit 14.**

In October 2020, Ms. Abubakar expressed her interest in one of three Team Lead positions which were opened in the Store.  Everyone who was eligible for the role was interviewed, which included approximately 8 Associates including Ms. Abubakar.  Ms. Abubakar was not selected for the role, and instead, Department Manager P.S. (Black female, age 45) Customer Service Manager Y.S. (Hispanic female, age 31) and Personal Shopper B.R-C. (Hispanic female, age 24) were selected for the Team Lead roles based

Katarzyna Hammond
May 7, 2021
Page 5

upon their interviews. **Confidential Exhibit 15.** Ms. Abubakar questioned why B.R.-C. was promoted despite being within her role at Walmart less than six months. However, Associates are not required to be in role for six months in order to be promoted, thus B.R.-C. was properly considered. During Ms. Abubakar's interview for Team Lead, she did not provide any indication of what improvements she would make in the role, and demonstrated an inflexibility in managing people, which was a task Ms. Abubakar had never performed in prior jobs. Alternatively, B.R.-C. had taken responsibility for the freezer section and trained new Associates, whereas Ms. Abubakar had no real footprint or impact in the Store.

In late October 2020, Ms. Abubakar again contacted the Ethics Helpline, alleging retaliation, disability discrimination, safety issues, and a conflict of interest regarding a Department Manager and her son working at the same Store. She claimed that after submitting her original Ethics concern, her co-Associates excluded her, or avoided her and that other Associates gossiped about her. **Exhibit 16.** Ms. Abubakar did not raise the issue of knee pain to the Store and did not seek any accommodation from Sedgwick regarding her knee pain. **Confidential Exhibit 17.** The Ethics investigation otherwise failed to substantiate any of Ms. Abubakar's concerns. <u>Id.</u> As P.S. had recently been promoted to the Team Lead role, it was determined that she could not supervise her son in his current role, and she ceased doing so during the investigation. <u>Id.</u>

Ms. Abubakar submitted her resignation via email to Ms. Olson and Ms. Taylor on November 15, 2020 but did not provide any reason for her resignation. **Exhibit 18**.

## III.   MS. ABUBAKAR'S CLAIMS FAIL AS A MATTER OF FACT AND OF LAW

Walmart did not unlawfully discriminate against Ms. Abubakar based upon any legally protected status. At the outset, Walmart did not treat Ms. Abubakar differently due to any disability (which she does not identify in her Charge), nor did it fail to accommodate her in any manner. As a threshold matter, Ms. Abubakar cannot establish she was disabled for purposes of the Americans with Disabilities Act as a result of her workplace injury, as her medical restrictions were temporary, and she was released to full duty within three weeks. ADA regulations provide that temporary, nonchronic impairments of short duration, with little or no long term or permanent impact, are not disabilities.

However, even if the workplace injury was considered a disability under the ADA, Ms. Abubakar cannot show that the Store failed to accommodate her. She was provided a Temporary Alternative Duty which permitted her to work within her identified medical restrictions. To the extent that Ms. Abubakar is referring to her abdominal surgery as a disability, she was accommodated in that she was permitted several months of leave and was granted a reassignment as an accommodation when she sought to return with medical restrictions. With lifting restrictions after her surgery, Ms. Abubakar was not able to perform the essential functions of the Personal Shopper role, but once her physician cleared her for unrestricted duty, she was able to return to work without incident. She claims her

Katarzyna Hammond
May 7, 2021
Page 6

knee injury was not accommodated, but she never sought any accommodation or otherwise notified the Store of any issue in that regard. As such, she cannot establish that she was discriminated against due to disability or denied any accommodation.

Ms. Abubakar also claims she was sexually harassed and harassed based on her other protected categories. The incidents which she described in her initial Ethics complaint, which included a male Associate following her and staring at her, and another male Associate wearing an offensive shirt and showing pornography to another Associate, were unfounded. Even if they occurred, neither set of incidents rises to the level of severity and frequency to establish a pattern of harassment due to sex. Moreover, when she brought them to Walmart's attention, if the incident had not been addressed, it was reviewed at that time and any necessary corrections were made. As well, other than vague allegations of a hostile work environment arising from her co-Associates as alleged in her October 2020 Ethics complaint, she does not identify how she was harassed due to any protected characteristic. Without more details, she cannot establish any actionable harassment occurred.

Ms. Abubakar also alleges she was discriminated against due to her race, sex, national origin, religion and age. Ms. Abubakar failed to provide any details of how she was treated differently from other Associates on the basis of any of these categories. There is no indication that she was provided any different work assignments, and she was never subjected to discipline or termination. Three females of minority status were offered the promotions to Team Lead (one Black, two Hispanic) because they were the most qualified candidates. One of the three selected for the Team Lead, P.S., was older than Ms. Abubakar at age 45. The religious status and national origin of the others selected for Team Lead is unknown and not tracked by Walmart. However, there is no indication that any of the protected characteristics were a basis for consideration for the Team Lead roles. As such, Ms. Abubakar cannot prove any of her discrimination claims.

Further, her retaliation claim is without merit. Ms. Abubakar cannot establish that she was subjected to unlawful retaliation. In order to provide a retaliation claim, an Associate must show they engaged in protected activity, suffered an adverse employment action, and that there is a causal connection between the two events. Ms. Abubakar cannot establish that she has been subjected to an adverse employment action, as she was never disciplined nor was she terminated by the Store. She instead chose to resign. Moreover, there is no causal connection between her original reporting of concerns to the Ethics Helpline and any subsequent decision not to promote her to Team Lead. Three other minority candidates of various ages with leadership experience were selected. Ms. Abubakar was simply not the best candidate for the position.

To the extent that Ms. Abubakar alleges a constructive discharge, such claim similarly lacks merit. By choosing to voluntarily resign and abandon her position, Ms. Abubakar cannot claim that Walmart altered the terms or conditions of her employment.

Katarzyna Hammond
May 7, 2021
Page 7

Ms. Abubakar has not established the exacting relevant legal standard. Walmart addressed all of the concerns Ms. Abubakar raised, permitted her to take medical leave and to work with medical restrictions when necessary. She was not being threatened with discipline or termination, and instead chose to resign after she was not awarded a promotion. These actions do not constitute difficult, unpleasant, or intolerable working conditions sufficient to convert Ms. Reitz's voluntary resignation into a constructive discharge. At no time did Walmart ask, force, or intend Ms. Abubakar to leave her employment.

## IV.   CONCLUSION

Based on the foregoing, Walmart respectfully requests that the Commission dismiss Ms. Abubakar's Charge in its entirety with a no-cause finding. Thank you for your anticipated cooperation. Should you have any questions and/or comments pertaining to any of the foregoing, please do not hesitate to contact me.

Sincerely,

LITTLER MENDELSON, P.C.

*Deborah L. Sanders*

Deborah L. Sanders
816.788.7109 direct
Fax 816.817.2461
DLSanders@littler.com

DLS/BT

Attachments

cc:   Alison Day

4849-9118-6920.1 / 110822-1126